Good morning and welcome to the Ninth Circuit. We are pleased to have Judge Gary Katzmann of the International Court of Trade with us this morning or Court of International Trade and we will proceed with the one case on the calendar. The appellant of course may reserve time but we will not watch her time for you. And we begin. Good morning Your Honors. May it please the Court. Leo Lipschitz on behalf of plaintiff and appellant Ronald Pineda. If possible I'd like to reserve two minutes for rebuttal. You may and the secret is that if you use of your time I'll give you an extra minute. Thank you very much Your Honor. Given my limited time I'd like to focus on just two claims that were adjudicated as part of the summary judgment motion and those are the failure to accommodate claim as well as the age discrimination claim and I'll begin with failure to accommodate. The accommodation request that issue of course is Mr. Pineda's request to work four hours per day for about six weeks in November and December 2016 due to the brain injury that he had suffered earlier that year and that request was denied by Abbott. In granting summary judgment the district court relied on two items of evidence I'd like to discuss. The first is an email from Mr. Pineda to Abbott dated November 20th 2016 in which Mr. Pineda thanked Abbott for accommodating his other restrictions which he had also made and the district court used that email in essentially a dispositive fashion to conclude that because... Can I make two comments? One is that we are reviewing the summary judgment record to Novos and what the district court did or didn't do is not very important and the second is that I would be what I would most like to know and is what you're doing is what but in the other direction where are the disputed issues of material fact with regard to this issue and the age discrimination issue? Yes your honor as to the failure to accommodate there's a disputed issue as to number one whether the request was reasonable the we have testimony from Miss Wilson who's an employee of relations she testified that she cannot say that the request was unreasonable and as cited in our reply... Do you agree that we're only talking about the four hour a day request is that the only issue in your mind as to accommodation? Correct your honor yes and additionally as to reasonableness that is a fact-intensive inquiry that should be resolved by a trier fact and specifically a part-time or modified job schedule is one of the enumerated examples of an accommodation under FEHA's regulation that's one disputed issue. My concern is that the defendant's main response to this is that this was not a final denial and that he was at least one or two people specifically testified that they told him that he could come back and later on and ask for more time is that a disputed issue in fact? It is your reason being is that refusal was a permanent decision on November 30th 2016 Miss Tanner who Mr. Panetta's direct supervisor at the time specifically emailed him and directed him to obtain a clearance note to return full-time because Abbott had refused to accommodate that restriction and that email is in volume 6 of the record at page 16 and 95. Additionally that Abbott's own documented record of interactive discussion confirms the fact that they had refused to accommodate Mr. Panetta as to that restriction at the time their reasoning was because working full-time is an essential function which I'll address. But there is testimony in the record that they specifically advised him that he could come back and ask for it again. I mean that one what you wouldn't lose on that basis because it would be arguably a disputed issue of fact but there is such testimony isn't there? And your honor just to make sure I heard you correctly you're saying that there's testimony that they said he could come back to them and ask for more time? They specifically advised him of that. There is and there's also contrary evidence in the record which is what I just the one evidence I just walked through so I think there's a dispute there. Well then the other thing that there's a lot of emphasis on is that his doctor then said he that he could come back wrote a note saying what he was he could come back and and and your clients position on that as well he had to because otherwise I was gonna lose my job. I don't know if that's a good reason but anyway yes. Yes your honor and that doctor's note in fact has been heavily relied upon by Abbott. I think what's important here is that that doctor's note was obtained and refused to accommodate Mr. Pineda's restriction and it is our position that the failure to accommodate the liability for that triggers upon their refusal. As you your honor pointed out that doctor's note was only submitted in response and only in response to that their denial. So is that use all right counsel is there any evidence as to whether Mr. Pineda disagreed with the doctor's note and whether he argued why Abbott's accommodations were unreasonable? Yes your honor the testimony from Mr. Pineda frankly in his deposition he testified that he did not disagree with the note and the reason he testified to that is as we've been talking about that he felt it was needed for him to return to work to avoid termination. The reason he felt what was provided to him was insufficient was because the original doctor's note said he needed six weeks of part-time work as opposed to just two and which kind of leads me into my my next argument as to the disputed issue here. Abbott's at the trial court level Abbott primarily relied upon the fact that they could not accommodate him because working full-time was an essential function. On appeal they more or less abandoned that argument but what's important is that in evaluating whether full-time was an essential function they did not submit any actual evidence establishing that it was an essential function. To the contrary we have Mr. Pineda's job description as a regional account manager as well as record of interactive discussion which actually enumerates the essential functions from their perspective and neither of those two documents list full-time as an essential function. Didn't Mr. Pineda acknowledge that he was unaware of anybody who had his role who was part-time? Yes your honor he did and I think taking that in isolation that could be a fact weighing in favor of summary judgment but combined with evidence that work it was a full-time job but working part-time for just six weeks would not have impeded any essential functions. In fact Miss Wilson when presented with the documents I just for why granting Mr. Pineda four hours per day at for six weeks would have impeded any of his essential functions and that testimony is that volume 15 at page 4105 through 4106 and I think when you combine the that evidence with the fact that Abbott is not claiming here this was an undue hardship or an undue burden together with evidence that the disputed issues I previously mentioned as to the reasonableness of the accommodation I would submit to the court that there are disputed issues here which render summary judgment inappropriate as to this point. Right I have one question and I think you've alluded to this but my understanding is and correct me if I'm wrong is that Mr. Pineda did not make or any effort to extend his accommodation as December 1st 2016 approached and instead he provided the doctor's note that cleared him to resume work full-time is that is that correct? It is correct he provided that note directly in response to a supervisor's email asking for the note but yes he provided the note he did not request additional time after his initial request was denied. And finally Mr. Pineda has not I don't doesn't say that that no one did tell him that he could come back and ask for more time does he he relied on the documents that seemed to say this is which he denied the representation that he was specifically told that he could come back and ask for more time? He has your honor his testimony is that he was told that if you don't come back full-time by December 1st you're terminated. Okay you can turn to H and I'll give you why don't I give each of you five more minutes because we have only the one place we may as well hear it out so go ahead. Thank you very much your honor I appreciate it. Before you switch to H let me just ask the district court expressed some confusion as to exactly what disability was being claimed what exactly do you assert is the disability the known disability that required accommodation? Mr. Pineda had suffered a brain injury specifically he was diagnosed with a brain hemorrhage a cracked skull and a concussion all of which were the result of him falling in his kitchen in September of 2016 and that evidence is at volume 12 pages 3160 and volume 1439 12. Okay so you're not relying on anxiety or independent stress or mental disabilities it's the physical disability from the fall and in September I think it was? Yes your honor those earlier disabilities which your honor just mentioned were earlier that year and I don't believe they're pertinent to this accommodation issue. Okay thank you. Turning to age discrimination the let me I'll address the prima facie case first and I'll focus on the last prong of the prima facie case which is evidence that some evidence of it giving inference to a discriminatory motive. Here the fact that Mr. Pineda was replaced by an employee who was 28 years old essentially half his age. That's even that that seems to be disputed I think as to whether this person actually replaced him and how old she was. Is that right? The notion seems to be that the only evidence of that is that Mr. Pineda said so. Is there other evidence of it? There is your honor. Miss Tanner Mr. Pineda's last supervisor she testified that Miss Jacqueline Wurtzbacher and I'm probably mispronouncing her name but she testified that she replaced Mr. Pineda and we do have testimony that she was 28 years old and that's at volume 15 page 40 volume 15 page 4063 and 4158. Based on the authorities we've cited I'll submit that that evidence alone then satisfies our prima facie case especially when combined with evidence of pretext which can be used to support a prima facie case and I'll jump into that next and just for the record we do concede that Pineda I'm sorry that Abbott has satisfied its burden under the McDonnell Douglas test and they have proffered a legitimate business reason justifying termination so now the issue turns to plaintiff to demonstrate pretext. As the pretext I'd like to first talk about job performance because that's really the central issue here Abbott's primary argument is that Mr. Pineda failed to drive sales because in 2011 Vice President Scott Callis came into the company and he initiated a new and a new sales strategy through which regional account managers like Mr. Pineda were required to drive sales through C-level executives as opposed to lower-level employees and Abbott is saying that Mr. Pineda could not perform that particular task. I think that's important because that initiative was rolled out in 2011 and for at least two years thereafter Mr. Pineda earned excellent performance reviews and was specifically commended for a strong performance in that very area which is again selling to C-level executives and I think the question of whether after 21 years of service beginning in 2014 Mr. Pineda forgot how to do his job or whether he was subjected to age corporate culture of ageism as well as subjective criticisms which easily lend themselves to discrimination that question is one for a trier of fact to resolve but unfortunately I believe was resolved by the district court in having weighed evidence on summary judgment. The other issue of pretext is our Me Too evidence which is significant here we have four Me Too witnesses two of which directly reported to the same supervisors but all of them confirmed that as they approached their early to mid 50s after having worked at the company for a long time they were suddenly subjected to bad performance reviews three of them were fired one resigned. Only one of these individuals was supervised by the same people as as Mr. Pineda is that correct? Two of them were your honor the first one was Karen Newborn she reported to Frank Weiss who specifically asked about her age and then at a company dinner and then mistreated her after she refused to 57. The second Me Too witness is David Kolchuk who reported to Yvonne Tanner Miss Pineda's last supervisor and what's important about this evidence is these four witnesses submitted directly contrary declarations with Abbott which directly contradicted their testimony that they had provided to our office earlier and so we now have a summary judgment motion with eight conflicting declarations among four witnesses which I think is the essence of a disputed issue. They submitted other declarations later? I didn't know that. Yes your honor our four Me Too witnesses initially signed declarations prepared by our office. I saw depositions but there were also other declarations? Yes your honor all four Me Too witnesses signed contradictory declarations which Abbott submitted with a summary judgment motion and so we have a disputed issue there as to which declaration is to be believed and that of course is a credibility issue which cannot be resolved in summary judgment. Could I ask you counsel just to go step back for a moment to the prima facie case issue regarding Ms. Wurtzbacher. So I refer you to the Nitz v. Schindler case that refers not only to the age of the employee but the question of whether it's alleged that the person who's doing who is who's replacing has equal or inferior qualifications. Now I don't believe that Mr. Panetta in his testimony indicated that Ms. Wurtzbacher had equal or inferior qualifications. Where the record is that? Your honor that is correct that evidence is not in the record and again I think viewed in isolation it could be very persuasive. Here as cited in our reply brief that requirement of equal or inferior qualifications has been abandoned by much more recent decisions specifically the Sandell v. Taylor-Lista case that's at citation 188 Calap 4th 297, Penn site 321 as well as the Hersante v. Department of Social Services case both concluded that there need not be a showing of equal or inferior qualifications by the replacement at the prima facie level and from my reading of the case law that requirement also applied to ADA cases not to FEHA claims which of course is what we have here. What about the retracted declaration by Caldwell? Yes. Yes your honor Ms. Caldwell submitted a declaration establishing that among other things the vice president Scott Callis who she testified that Mr. Callis had specifically told her to manage out a 30-year employee by the name of Roger Castle and that there was no basis for doing so there was nothing wrong with this performance and then Mr. Callis followed up with her as far as saying have you gotten rid of Roger yet? Right. She submitted another declaration and said that she had wanted to retract that paragraph but she also as to all the other paragraphs essentially said oh I never really heard that and that didn't and that happened and a bunch of other things. So what do you make of the fact what what do we do with that? Do we take the second declaration? Do we take both declarations? What do we do with it? I think the court should review both declarations and as your honor pointed out they are almost directly contradictory and that's why we cannot have summary judgment granted in this case. I believe a jury needs to hear Ms. Which version is true? What she said in the first declaration or the second? She said that the first declaration was submitted to the based on her personal knowledge. What Abbott says about it is well you never really relied on that you never really denied her second application her second declaration with regard to what was really an accusation of attorney misconduct essentially and never relied on it in the district court and now you're bringing it up again when it was essentially agreed to or recognized as untoward. So what was this relied on the district court as a material issue of disputed fact or was and was it ever was was her story that she was essentially fooled into signing this ever refuted? No your honor it was not and I'll submit to the court I don't believe that we have an obligation to rebut that on the summary judgment level we have at the end of the day we have two contrary declarations she reviewed she does not deny refuting the first one excuse me she does not deny reading and signing the first one and then months later coincidentally right before Abbott is supposed to file their summary judgment she signs a contrary declaration and she only the paragraph your honor just referenced as far as the that she indicated to the attorney that she wanted something changed and it wasn't changed that only relates to one part of her initial declaration what I mentioned about managing out Mr. Castle however she contradicts the entire first declaration and there's no explanation for that there's no allegation of any kind of being tricked into signing as to other parts of her declaration which is why I don't believe that I would submit that there are there's just a factual dispute there and I believe I'm over my time your honor so thank you I'll give you one minute in rebuttal Mr. Lin thank you your honor good morning and may it please the court my name is Albert Lane and I'm here on behalf of the Abbott defendants your honor if I may I'll turn first to the accommodation question that my friend started with I think it's important to start with the fact that I think some of what he was saying has the analysis backwards he was arguing that the accommodation that mr. Panetta asked for was reasonable that's not the question here as the cases say as we note in our briefs a company is not required to adopt the best accommodation or the accommodation that the individual asks for the only question is did we provide an accommodation and and is there a dispute of fact that should go to the jury about whether that accommodation was reasonable I think the first answer to that first part of that is yes we did provide an accommodation we did not require him to work eight hours per day upon coming back we gave him four hour per day workdays through December 1st and then judge Brazzo and you mentioned it does say in the record in the official employee file that we could revisit that in two weeks but that isn't isn't that a issue dispute issue of material fact as there are also if you don't come back you're going to get terminated and you know I'm sorry you are two answers to that first I don't think it's disputed he says in his deposition testimony at one point he says I was threatened with termination but then when he's asked further about it he backs down on that assertion and actually says that they simply said that they needed and I hear it's here's the quote she said they need an employee that is working eight hours a day December 1st he was asked did they say that you would be terminated he said basically I'd be terminated well what they said was they needed an employee you can work eight hours per day so first of all you know I don't think there's a dispute but I don't frankly think it matters which is really my second answer we gave him the two weeks and there is nothing in the record from which a jury could draw the reasonable inference that's starting on December 1st he needed more he needed that for four hours per day there's the only thing he points to for that is he suggests that the doc the second doctor's note well two answers first he says the first doctor's note says that he absolutely needed six weeks of four hours per day that's not true your the note is of course in the record that's at volume 13 3494 and what the doctor says is these are transitional they are subject to discussion and reasonable changes so the first note doesn't establish that he needed six weeks of four hours per day and then he comes back with the second note that says that he's able to work eight hours per day starting December 1st the only alleged disputed issue there is mr. Panetta asserting that the doctor lied but in his deposition testimony he admits that the only evidence he has of the doctor's mindset is what the doctor wrote in the note he's asked all you know about what your doctor thought is in the note isn't that right back to the doctor's note I see a November 8th no and it says on the top for accommodations as follows I don't see anything about they're subject to discussion or at the very bottom your honor so this is volume 13 3494 it says these work accommodations are transitional as the employees medical condition improves these are all also are subject to discussion and it's not the November 8 2016 letter that you're looking at I'm looking at I'm at volume 13 I know I am yes I was at volume 13 3494 but in the letter what that is what he says at the very bottom well it's not the letter I've got it must be a different letter because it's not the letter I've got all right go ahead so I think that's really the question here is is there any evidence in the record that says that he needed more than you know he needed the four hour per day starting on December 1st and and there just isn't anything in there excuse me other than his bold assertion again the doctor's note from December says that he was able to work that period of time and there's nothing that contradicts the doctor's note there's no affidavit for example from the doctor that's in the record that says that you know she felt compelled to lie for him the doctor's note stands on its own and even now your honors even in their briefs he does not contend that there was that having to work eight hours per day from December 1st on was impeding him from doing his job and that's the standard for whether something is reasonable the Scott case says the chosen accommodation is of the job so that's really the question is there a dispute of fact as to the reasonableness of the two weeks that we gave him your honor even if we think that there is no dispute that he was able to come back in two weeks and discuss this again but I think even without that there's nothing from which a jury could conclude that our accommodation was not reasonable as to discrimination we think he hasn't made the prima facie case we think that for a couple reasons including that his performance was not competent from 2014 through 2016 they say we need to look at objective evidence and there is objective evidence as a set of valuations that he disputes the details so I don't understand I mean it's it it seems to me from what I know about years of working with these and discrimination cases is that the prima facie case is extremely minimal and that the competence or the qualified prong is essentially does he have the right paper qualifications to do not the details of trying to back up into the prima facie case a lot of material that the McDonald-Douglas approach was designed to deal with at later stages the McDonald-Douglas approach just sort of sets up the inquiry by saying you know does this person have the right degrees and the right number of years of experience and so on and was he replaced by somebody who is not in the protected class pretty much period that's how I've always seen it used your honor I don't dispute that the standard for prima facie is low and I think we could simply turn to the pretext question as the district court ultimately did I think it's equally straightforward to look at the pretext question I think the problem for mr. Panetta there is that the standard that's required to show colleagues case from this court says in other cases Godwin that says there has to be some specific and substantial evidence that the company's stated reason is not believable that it's not that it's unworthy of credence and the California courts loading inferences that one could draw from there it doesn't need to be statements or direct evidence inferences from the record are the difficulty for him is the California courts have said the stronger the employees showing is the stronger his evidence must be and so I think the difficulty is given the vast array and and different kinds of evidence that we have here which is both objective and subjective your honor you did point out that there are subjective evaluations but there's also objective sales data as we pointed out from 2014 and 2015 that has him last or near last at least below average amongst his peer group there's also the complaints yes doesn't he say that with respect to at least one of those years there was kind of a data issue in the sense that some of the sales weren't quite finished even though they were and therefore they weren't counted even because for some technical reason well his argument is that the that there was a cutoff point right at some point they they came up with the numbers and that the data after that point would have raised him up but that would be captured of course in the next round of evaluations and in the next round of evaluations he was still last or near last the thing about this is it's all relative these are it's not just the the the objective numbers it's a comparison to where he stands amongst his peers and your honor the in 2014 and 2015 it's very clear that he was 10 or 11th out of 12 in many of these objective metrics but then in addition to that there is the three evaluations that your honor yes some of it is subjective but it's three independent successive supervisors there's also the votes at the talent review management meetings by people who were not as immediate supervisors where he was ranked in 2015 and 2016 by seven group and then there's also his own that seems like a funny process how do people who aren't working with him Rankin are not working with him right yes your honor they are not people who are working with him and I said there's there's review there's discussion amongst the team the sales managers about about his performance but then again as I said there's also the complaints from three subordinates that talk about his lack of leadership his inability to make connections with clients and I think the real point here is your honor that there is a vast array of independent evidence and so for him to show that that reason was not credible he's got to show that as he himself admits his theory is that everyone was in on it that that all or most of this evidence is not credible because everyone was in on it and that's what he says he says that there was a calculated there were false performance criticisms and a calculated plan to fire him and I don't think that the evidence that he offers your honor is specific and substantial evidence that that's able of climbing that steep hill for a reasonable jury counsel do you agree that under Hicks the KN TV that mr. Panetta is contention that he was should be closely scrutinized because subjective criteria lend themselves to the discriminatory abuse yeah yeah you seem to be saying that because similar evaluations utilizing subjective criteria came to more or less the same conclusion that that somehow becomes objective evidence to answer that your I'm talking about objective evidence I'm what I mean is the objective sales data the numbers the raw numbers are objective in terms of the subjective evaluations your honor I think that is exactly right there are cases that say that subjective criticism needs to be viewed closely but I think as as the cases also say and as mr. Panetta says the question here as in any case about right and you have to put yes there's a subjective evidence but one in in in some of these cases that he points out the Sandell case for example it's one supervisor who had one evaluation that was entirely filled with subjective criticism and and that deserves very close scrutiny reading through some of the evaluations they seem to keep going back to the beginning or at least some of the reports about why he was being terminated and so on and reiterating this material from earlier supervisors like that he sighed during presentations and there was one whole incident about he was 28 minutes late to a 30 minute meeting and he has this long explanation about it was really miss Tanner's problems and apparently they were both 28 minutes late to a 30 minute meeting together and and then that keeps getting carried forward without his explanation so it isn't really so independent there they accumulate in the sense that that things that he has tried to explain his explanations are never incorporated and the criticisms keep getting carried forward and carried forward and carried forward is that a fair description your honor I think that when you look at the evaluations there are there are things where there's recapping of what's happened before but I think if you also your honor there's there's also a continual addition to that talks about things that happened within the year that was being right but they're not independent I mean they're all accumulating and they are repeating things that he has answered without accounting for his answer yeah your honor I think the the they even if there is stuff that's repeated there's new there are new additions right so for example in January of 2017 he was given a 45 day report on things that he how why he wasn't meeting the performance improvement plan that he was under at the time and there are bullets starting from November 28th of 2016 all the way through to this one seems to me the performance goals included as I to buy their products or do it converts was I guess what they call it and miss Panetta says that's mr. Panetta says that's totally unrealistic and from what I know of Kaiser it is totally unrealistic there's no way they're gonna make any decision in 90 days starting from zero so to say that he didn't do that isn't I don't know if you caught I guess it's objective in one sense he didn't do it but the fact that he should have been expected to do it seems extremely questionable your honor and the 90-day deadline that was was that was he complained about that he said that that was unrealistic and that was changed your honor so there are things that where they were it was changed to the expectations were changed it wasn't that he needed to convert it in the 90 days and the other thing your honor is even if there's you focus that way to submitted a reasonable answer to that and that was changed I think if you were to want to attribute discriminatory intent that would have been something that you know you would think someone would have kept the same but I think the other thing to remember is again it's it's not just the individual performance evaluations from 14 15 and 16 but it's the other evidence including he himself saying that in 2014 he rated himself at 70% and said in his deposition testimony that he needed improvement in 2010 he says in his declaration I never gave myself a number but it's there so I never I never rated myself with a number a numerical number and yes that's and but he's also says in various places in his response that there are things that need improvement where he specifically says in the 2015 review and in the 2016 review where there's a part that he fills out himself where he says that there are places where he needed needed to do better and again your honor I come back you know to the the the objective sales numbers which don't change and and there's always going to have to be a cutoff there's always going to have to be a cutoff where you determine here are the numbers that we're going to put into the evaluation if there are things that happen later in the year that will of course be you know we be taken into account in the next time around how do you respond to that as argument that Abbott violated its internal policies at least four times by failing to report his discrimination allegations and does that show pretext your honor I don't think it does and there's two answers to that one it's the factual answer is he only points to one instance in which there is an alleged violation of Abbott's policies that's the July 2015 complaint that he made to his supervisor at the time mr. Weiss he says he made that complaint and that under Abbott's policies there should have been an investigation and there wasn't he does not point to any violation of Abbott's investigations he claims in his view that they're deficient but he doesn't say that there's wasn't point to anything specific no policy that shows I thought he said that they didn't interview Tanner even though she was a supervisor he does say that they didn't interview Tanner but he doesn't say that that is a violation of Abbott's policies not a rather peculiar way to investigate an accusation of discrimination by a supervisor by not talking to the supervisor your honor there's it's unclear to me why they didn't talk to miss Tanner but they did do and he doesn't dispute he they interviewed a number of people they looked over the records and I think the question again is that you've got to put all of this in context and evaluate the entire record those investigations were done by someone employee relations who was not part of the decision-making process not yes your honor who did not play a role in the performance evaluations and again for him to call into question to show by again specific and substantial evidence that if he had been terminated before he was reached his 55th birthday would he have gotten no pension whatsoever your honor that wasn't developed in the record below because that 55 age is this early special retirement and that's not an argument they raised below and so there's no record as to what they certainly have suggested that part of the motivation was that once people hit age 50 they look for reasons to get out so they wouldn't have to pay the pension at 55 that that's certainly part of the theory and I just want to know is does is that right does the pension terminate right to the pension terminated age 55 your honor again I that was not developed in the record below as to his qualification for the early special retirement that we're talking about but he did he is drawing his pension now he he was not terminated until January of 2017 they make a big deal out of this 55 year age deadline but in from the time that he went on the performance improvement plan he was given two medical leaves and then and that performance improvement plan was restarted it's not as if the first time he this came up because it was before his 50th birthday he was terminated he was given more opportunities every time through that the PIP restarted and and was was coached and was given these chances to improve his performance the PIP yes your honor I just well finish your thoughts I was going to shift to a question about primatization of course your honor the one thing I want to say is that the poor performance review started in 2014 and the performance improvement plan that went in started in January of 20 2016 is when the process started that's what's in the record and all of that happened your honor before he went on on leave before he made any official complaints to ER so all of that the timing doesn't work all of those things that happened happened before and then not before he accused Weiss and I think Tanner of age discrimination not before he accused the two answers to your honor the the the accusation of Weiss that he made to Weiss himself was in July 2015 but there was the Arnold performance evaluation before that and there was the the Weiss review as well as the numbers that are used in that review all came out before he accused Frank Weiss and then as to Tanner your honor the accusation there didn't happen until February of 16 leave Dutch wanted to ask a very specific question they argued in their reply brief and have argued again this morning that Sandell and her son to eliminate this equal or inferior qualifications requirement do you agree with that or what's your response to that your honor those cases do appear to suggest that if you just have if you meet the other standards and you've established that as someone who was younger than he has replaced you that that meets the our argument on the prima facie case is is turns mostly on the competence which is something that we are you got up today as well as in your brief and said that there was nothing in the record about whether this person had equal or inferior qualifications now you're agreeing and it does seem to be the case that is that is not a requirement in the case law your honor we we relied on nids and I I admit that nids and the other cases do appear to say that you don't have to have the substantial qualifications okay you are well past your time yes your honor we appreciate it thank you and I really lost track of time but why don't we give you three minutes three minutes over as extra five minutes so go ahead thank you very much your honor let me begin with the age discrimination claim what could you begin with the question of the sales data and whether it in fact demonstrates that he was well for 11 out of 12 in sales for the relevant periods yes your honor as to the sales data I'll go through the three years that are at issue 2014 15 and 16 in 2014 there's a dispute as to the sales data because the the protocols as to the sales numbers had not been reflected yet in the records therefore we couldn't we sales numbers were in 2015 mr. Panetta achieved 90 and 90 per excuse me he achieved 90 percent and 97 percent of two different sales goals hardly I think you can say that's not performing well and he was ranked second out of 12 nationally in retail sales that's at volume 6 pages 1562 I believe that's for the for the so the 2 out of 12 is for the national sales the 11 out of 12 is for regional or for local sales that's a different metric and in 2016 yes the sales numbers were lower but as he explained in his response to the performance review they were only lower because of quote medical setbacks he was out on leave for a significant chunk of that year therefore to use that against him for having bad sales numbers I think I wondered about that so that period includes the period that he wasn't working correct and the the PIP they did issue him multiple PIPs or I should say reissued the same PIP multiple times but there's two things with that the first is they only did that because they had to under the law he was he can't be expected to fulfill PIP requirements while he's not working and secondly the last PIP from as a result of which he was fired they'd never let him finish that PIP he was about halfway through a little more than halfway through when Miss Tanner recommended that he be fired before even letting him finish out the PIP to see where he was. What about the Kaiser he says that the Kaiser requirement was retracted and then there was another one for another hospital which he said was those change? The Kaiser one was changed your honor but the there were other expectations that Mr. Panetta felt Miss Tanner was impeding him with specifically she was not giving him access to certain computer files that he needed to in order to drive sales and perform his job and he felt all of that was essentially setting him up for failure. Also other than the runway comment is there any which the district court judge said was a factual statement is there anything in the record that Mr. Panetta has pointed to which is an ageism kind of comment? Not made directly against Mr. Panetta but made by Mr. Callas who participated in the termination decision when he told Miss Caldwell to manage out another employee and also the the runway comment the full comment which this record did not consider is that he was told because you have a short one what a short runway you're not an ideal candidate for promotion. I don't understand the relevance of that because this is not a promotion case. The relevance your honor it's not a promotion case the relevance of that is it shows that they're using age even if it's true that you have a runway as you get older but they're now using age to make employment decisions about promotion and that demonstrates bias and that goes to their motives. Okay your time is up thank you. Thank you very much your honor. A really factually dense and useful argument and we are in recess thank you very much. Thank you your honor. This court for this session stands adjourned.
judges: Berzon, Katzmann, Collins